GEORGIANA M. JOHNSON *vs.* WILLIAM M. LEE, C. T.

NOVEMBER 10, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Highways and Bridges.   State Board of Public Roads.   Negligence.*

It was the intention of the General Assembly, by Pub. Laws, cap. 846, §§ 1
and 6, to place all bridges lying between portions of any highway which has
been constructed by or upon which work has been done by the State through
the Board of Public Roads, under the supervision of said board, from and
after the passage of said act, to the same extent and with the same powers
to reconstruct and repair which had theretofore been given to such board
in the matter of highways.

From the passage of said act the city within which the bridge was situated
became divested of any power to repair or to do anything in or about the
maintenance of the bridge, and could not be held responsible for its defective
condition.

TRESPASS ON THE CASE for negligence.   Heard on excep-
tions of defendant and sustained.

VINCENT, J.   This is an action brought against William
M. Lee, as treasurer of the City of Cranston, to recover
damages for personal injuries received by the plaintiff,
caused by an alleged defect in that portion of the highway
system in said city commonly known as the "Silver Hook
Bridge."

The plaintiff claims that on June 17, 1913, at the hour
of about seven o'clock in the evening, while passing over said
bridge, and being upon a portion thereof lying within the
City of Cranston intended for the use of foot passengers,
and being unaware that the bridge was in a dangerous
condition, a plank gave way under her weight, allowing
her leg to pass through to a point above her knee, causing
her to fall and to sustain painful and serious injuries.

The case was tried to a jury in the Superior Court and a
verdict was rendered in favor of the plaintiff in the sum of
$1,500.   A motion for a new trial was filed by the defendant

and was denied, whereupon the defendant filed his bill of exceptions.

These exceptions are to the refusal of the trial court to direct a verdict for the defendant, to various rulings of the court in admitting or rejecting testimony at the trial, and to the decision of the trial judge denying to the defendant a new trial.

The defendant claims in and by his ninth exception that the trial court erred in refusing to grant his motion to direct a verdict, such motion being based upon the ground that at the time of the accident to the plaintiff the bridge upon which such accident occurred was under the control and supervision of the State Board of Public Roads and that, being thus subject to the administration of the State, the City of Cranston was absolved from any responsibility for its defective condition, if any such condition should be found to exist.    If this claim of the defendant is good it is decisive of the case and may therefore be properly considered in the first instance.

In taking up this question it is necessary to examine the provisions of Chapter 846 of the Public Laws, and especially the portions of that chapter embraced in §§ 1 and 6, which are as follows:    "Section 1.    All bridges lying in any highway or highways which have been constructed by or upon which work has been done by the State under the supervision of the State Board of Public Roads shall hereafter come under the supervision of the State Board of Public Roads."

"Sec. 6.    All bridges so repaired, constructed or reconstructed pursuant to the provisions hereinbefore set forth shall upon the completion of such construction, reparation or reconstruction be and become a part of the State highway system, and shall henceforth be repaired, maintained and reconstructed by the State under the supervision of the State Board of Public Roads.    Except where any of said bridges are used by any public utility, then the said public utility shall pay in the manner provided by § 3 of this act toward the maintenance, reparation and reconstruction of said bridge."

The act was approved May 3, 1912, more than a year prior to the accident to the plaintiff, and by its terms took effect upon its passage. The desirability of this enactment may have been suggested to the General Assembly by the opinion of this court in *McCommiskey* v. *Greene*, 32 R. I. 402. That was a case brought by the plaintiff against the defendant as town treasurer of the town of Coventry to recover damages sustained in crossing over a bridge in said town by reason of the breaking of a defective plank. The defendant there pleaded, in addition to the general issue, by special plea that under the Public Laws of Rhode Island, Chapter 982, now General Laws of 1909, Chapter 84, that the bridge in question was part of a State road over which the town of Coventry had no control. To this the plaintiff replied that the bridge was not a part of the State highway and issue being joined the case was certified to this court for decision and it was held that the act did not furnish any evidence of an intention on the part of the General Assembly to empower the State Board of Public Roads to do anything whatever with regard to bridges, stating reasons for its conclusion which need not be repeated here.

(1)   It was therefore unquestionably the intention of the General Assembly by its act of May 3, 1912, Chapter 846 of the Public Laws, to place all bridges lying between portions of any highway which had been constructed by or upon which work had been done by the State through its Board of Public Roads under the supervision of said board, from and after the passage of the act, to the same extent and with the same powers to reconstruct and repair which had theretofore been given to such board in the matter of highways and such intention to do so is clearly apparent from the language of § 1 of the act.

It does not appear to be disputed that the highway upon either side of the Silver Hook Bridge was, at the time of the accident to the plaintiff, under the supervision and control of the State Board of Public Roads. The bridge also came under the control of the same board upon the passage of the

act on May 3, 1912, and thereafter the State, through its board, was the only party invested with the power and authority to reconstruct or repair it. The City of Cranston had become divested of any power to repair or to do anything in or about the maintenance of this bridge, the supervision of which had been given to the State board by the act. The only thing remaining for the City of Cranston to do after the passage of the act was to provide for and pay its proportion of the expense of reconstruction or repair when the same should be ascertained in the manner which the act specified.

By § 6 all bridges constructed, reconstructed or repaired under the preceding sections of the act, upon completion, become a part of the State highway system thereafter to be repaired, maintained and reconstructed by the State. This does not in any way detract from the force of § 1 which imposes upon the board the duty of immediate supervision upon the passage of the act.

We do not see how the City of Cranston can be held responsible for the defective condition of a bridge over which it had no control and no authority to repair, such control and authority being vested by the act in the State Board of Public Roads. We think that the trial court should have directed a verdict for the defendant as requested, and the defendant's exception numbered nine is therefore sustained.

In this view of the case any consideration of the other exceptions becomes unnecessary. The plaintiff may have the opportunity, if she shall see fit, to appear before this court on the 17th day of November, A. D. 1915, and show cause, if any she have, why this case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*Archambault & Archambault*, for plaintiff.

*Frank H. Wildes, City Solicitor*, for defendant.